Good morning, your honors. I'm Michael McCabe. I represent the three appellants in this case who are Basil, Fatima, and Rawia El Farra. The issue which I'd like to address first is the applicability of Crawford v. Washington to this nominally civil case. I believe that this is a case of first impression. I don't believe that there are any cases in this circuit or in any other circuit for that matter post-Crawford which have addressed this particular issue. As I set forth in our pleadings, as we indicated in the briefs, the two cases relied upon by the government as standing for the proposition that the Confrontation Clause does not apply to civil asset forfeiture cases. I don't really say that. Both of them are pre-Crawford and, for that matter, pre-Austin. And in each of them, the issue which we're raising here was not discussed or ruled upon in the $9 million and change case. It was a pre-Crawford case that simply held that the district court had the right to review in a pre-CAFRA case materials in camera to determine whether to stay the forfeiture proceedings pending the resolution of the related criminal case, which, of course, does not implicate what we're talking about here. In the other case, 6109 Grub Road, the Third Circuit case, only dealt with the admission of deposition testimony at the trial of the case rather than requiring that there be the actual witnesses testify live before the jury. But in that case, of course, as Crawford requires, the person or the plaintiff's claimants in that particular case certainly had the right to cross-examine the person who was deposed and whose deposition was ultimately admitted into evidence. And so that's all that Crawford requires. That's all that we wanted in this particular case. Roberts. The Court has previously said the Confrontation Clause doesn't apply. Why does Crawford change that? Well, I don't think that the one case in which they have said that that is the case, which was a footnote in Austin, footnote 4, reflects that the Court has not previously applied the Confrontation Clause. And the date which is relied upon for that is 111 years old. And more importantly, that particular statement was dictum in that particular case, which dealt with the applicability of the Excessive Fines Clause to what was nominally a civil case. And the Court in that case found that because the Excessive Fines Clause operated both in design and function as punishment for the criminal law, for a violation of the criminal law, that it did indeed apply. Let me clarify my question. We can't change the reasoning of a prior panel's decision. What we can act upon is superseding authority. And I understood your argument to be Crawford is superseding authority. You're now giving me all the reasons why that first reference in Austin was incorrect. But that's there. That's not for us to change. Unless you can distinguish that case or explain why it's superseded, we're bound by it. Well, what I'm saying is that you're not bound by it because it was not the rule of the case. It was an observation in a footnote which was pure dictum. And the law is still clear that neither this Court nor any other circuit court is bound by expressions by a judge who happens to be authoring the majority opinion, which is not essential to the resolution of that opinion. And the reasoning set forth in that particular footnote is flawed and has not been followed. It asserts that the reason that the Confrontation Clause is not applicable to civil cases, even civil cases which I submit are really criminal cases with the names and procedure changed, is that the Constitution... Well, this is a criminal case against your client. It's potentially a criminal case against his son. It was a criminal case against his son. But how does this become a criminal case against your client? Well, because it operates in design and function as punishment for violation of the criminal laws. No, it doesn't. Your client is not accused of violating any laws. The point of this is that it's his son's money. He violated the laws. Now, if your client can establish entitlement to the money, he may get it, but there's no charge that your client violated any criminal laws, and it's not set up as an intent to punish him. Well, the punishment was that this was not remedial in any sense of the word. The punishment was the forfeiture of the currency because of the assertion by the government that it was the proceeds of drug dealing. And that operated to, because of that situation, we were subjected to two legal fictions, which prejudiced the appellants in this particular case, the first being that this was not a criminal case, the fact that they were not themselves accused of wrongdoing. Excuse me, counsel. Are you aware of any case from the circuit or the Supreme Court that has held or suggested that a forfeiture is, in fact, a criminal proceeding or that the confrontation clause applies? Well, there are cases. The case from this circuit, which is the one which is primarily relied upon, is the United States v. $191,910 in U.S. currency, in which the court noted that although forfeiture proceedings are nominally civil in nature, our legal system has recognized the opportunity we would create for oppressive government behavior if we were to treat these punitive proceedings instituted in pursuit of law enforcement goals as civil for all purposes. And I think that that is the formulation which essentially says that these are indeed criminal cases which have proceed under the fiction of in rem, the defendant being the property as opposed to the owners of the property. And as I was saying, we're subjected to two fictions in this case which prejudiced us. First of all, that it was a civil case when it clearly was not. Except the proposition that I'm not going to say clearly was not. I just don't think that's right. All right. Is $191,000, was that case involving the criminal defendant as the person with whom they were fighting to get the money? In that particular case, it was, Your Honor. Well, this case isn't that case, is it? No, it is not that case. Do you have any authority that speaks to this situation? And I believe that therein lies the prejudice because someone who is subjected to a concurrent criminal type of a prosecution has more rights in the civil case than a person who is claiming to be an innocent owner of the rest in question. Of course, yes. Judge Trager has a case. And to be honest with you, I didn't think much of your Crawford argument at all, but maybe I gave it too little consideration. Well, what about your standing argument? It seems to me you have something there. Well, I think that that's a slam dunk. It's the reason I was addressing the more difficult proposition, and as a practical matter, even if we have standing, we have a tremendous burden to overcome because we have to attack the, not only attack the search warrant, but also prove the... Well, the search warrant, maybe I'm wrong. I couldn't find that in the record. There is a search warrant, and the search warrant itself was an exhibit to the motion to suppress. The search warrant itself was simply a telephonic warrant, and but the... Give me the record site. I guess I missed it. The affidavit is not in the excerpts of record. Would you, after the argument is over, would you make sure to give a copy to the deputy clerk so that that can be circulated to the panel? I will do that, indeed. And the issue here was, well, we never got to the point of attacking the warrant, which was the affidavit for which was sealed because of a state case named Hobbs, and before we got to that point, the government asserted that we didn't have standing, and therefore we weren't entitled to even see the affidavit in terms of making a motion suppress, which clearly lies. But I don't believe that there is any merit to any of the government's arguments. There is not a single case in which the owner's residence and occupants of a piece of property in which their adult son is permitted to live as a tenant in sufferance and to which they have clear and complete unfettered access. I'm assuming you're right because I never saw the affidavit. You know, you do have a search warrant, which is a heavy burden. Well, you can't answer if you've never seen it either. That's it. Okay. That's the problem. Let me, maybe I've misunderstood. I haven't seen it either, but my understanding was that there was only a portion of it that was sealed by the state court and that the declarant actually testified, and so you would presumably know what it was that he testified to. Is that correct? No, that's not correct. The declarant did not testify. It was a telephonic warrant. The declarant gave the portion of the affidavit which was sealed to the reviewing judge, a state court judge who issued the warrant, but the only portion of the affidavit which we received was the fluff part, that is the background and history of the affiant and the reason why the probable cause determination had to be sealed without telling us what it was. Are you telling me that did the affiant testify at the criminal trial? Yes, but he did not testify as to the foundation and basis for the issuance of the warrant. Okay. Thank you. You've exceeded your time, so we'll hear now from the government. Thank you. Good morning. May it please court and counsel, my name is Bruce Smith. I'm an assistant U.S. attorney. I'm representing the United States in this case of United States v. $40,955. Can you answer the question? I think the judge was clearly wrong on the standing issue. Your Honor, when one looks at it, just an intuitive, quick view, Your Honor's point could be well taken, but you have to step back and take a look at where the trial judge was. The trial judge was simply given pleadings by the claimants saying that we reside there, but no declarations, no foundational. That wasn't disputed that they reside there and they own the house. Well, and when the district court judge looked at the facts, the district court judge could see we had an adult son living at the far end of a ranch-style home, essentially in a capsule. He had his own bedroom, his own bathroom, his own closet. He had an ingress and egress through the doorway out to the outside of the home. There are lots of what they call in New York mother and daughter houses where the mother always can go down to the daughter's apartment. And they normally have standing. I really get in trouble. In this case, Your Honor, the searching and the focus was all on that one room, and the judge heard the description. There was no door, for example, to that room that was locked that the parents didn't have access to. The judge didn't have that. That was never provided to the trial court judge. Well, then that seems like a problem for you because if the parents own the entire structure and there's no fact demonstrating that they are prevented physically from entering a part of the structure, then it seems like they would have standing for the whole structure. I respectfully submit, Your Honor, that the claimants had the burden. The claimants simply came into court assuming that, like everyone here, everyone would assume, well, you're the resident, so of course you have standing. But the other prosecutor that handled the motion stage looked at it and said, no, you have a burden. You haven't established anything. Why do they have a burden? Because that's what the law tells us. Burden to prove what? To prove standing. Well, they had the ---- I own the house. Why isn't that enough? I own the house and I reside in the house. Establish a standing unless there's proof that precludes it. Well, I respectfully submit that what we fall into, though, we fall into that automatic standing trap. No, we fall into having made a prima facie case, which you have to rebut. That's different. I respectfully submit that they have the burden. And in this case, I have cited you. What? Why is it not enough that they're the owner and resident of the house? Because the son had his own suite. So that's like an affirmative defense you're pushing forward. You're saying, my teenage daughter would love your argument, but I'm not likely to buy onto it for her room. Why is it we should assume that it's through here? The district court could see this was a rather unusual situation. This wasn't just a teenage son who happened to have his room at the end. He had this ---- it was a specialized unit for selling marijuana. He had his video cameras. He had his doorway. He had his monitors. That doesn't mean that the parents didn't also have a coextensive right to enter that space and have dominion over that space. I respectfully submit that that was their burden and their duty to establish that. Even if it was, they make ---- this is like burden shifting in the employment context. They said, we own the whole structure. We live in it. And if that's the only evidence, they would clearly have standing. So they've established their prima facie case. Now it's up to you to show that they ---- not only that he has specialized stuff, but that they have no access. And I don't see where they have no access as opposed to he really would like them not to come in or maybe they respect him enough not to come in. Again, I respectfully submit that the district court was given, again, no affidavits, no testimony, no representations at all under oath by the claimants. Do you challenge that they own the house or that they live in the house? I believe they ---- I think the honest truth that was brought out at the trial is that they certainly lived at the home. Now, I've never seen title documents, so I can't say that they are on title. That never came up. But I submit that they ---- see, what we have in their briefs, say, well, we had unfettered access, we had this, we had that. Well, where was that presented to the district court? What about during the course of the trial, could they stop and say, can we have a motion for reconsideration? No. They want the court just to make this decision, but they've offered no facts. And so they come back this, well, we own it, so we have standing. No, not necessarily. The court heard ---- That's why you should have held a hearing and made findings. Well, that would have been a benefit to the claimants, but the claimants could see the handwriting on the wall and they didn't offer any affidavits. They filed a reply. The reply to our points and authorities had no additional information, nothing to establish. It's their own fault. They are really trying to uphold this on automatic standing, and they've done nothing beyond that to further their case. And that was their fault. It's not the trial court, Judge. It was the claimant's failure in this case to present facts to show no. It wasn't ---- it's not just his little capsule. It's our whole home. We have unfettered access. We go back and forth. Judge didn't know that. I don't know what capsule has to do with it. Well, because ---- If it's not ---- if it's not proved that they don't have coextensive ability to come in. I don't ---- I submit, again, respectfully, we don't have to prove they don't. They have to prove that they do have access. And when you look at the cases where perhaps in some cases people pay rent or they have a locked door, those are some circumstances that have been viewed by the courts and recognized, well, that does shear off this part of the home from perhaps the owners. In this case ---- My recollection of the hearing in the trial, and to be blunt about it, only confirmed they had unreasonable access. There was no hearing. In terms of the testimony of the agents of what happened and where the parents walked in and stuff like that. Well, Your Honor, that decision was made on the pleadings. What Your Honor is referring to, there's no testimony at the hearing. There's no hearing. I mean, it was at the trial. Well, that's afterwards. And I respectfully submit, we can't go back. After the court's made a decision, unless the claimant reopens the issue, we can't go back and say, wait a minute, you made a decision here in February, Your Honor, and during that May trial we learned additional facts. Well, that's the obligation on the party to say, yes, can we have a rehearing on that or reconsideration? Why are you so afraid to show the affidavit? I mean, that was the, you know ---- I'm not afraid to show the affidavit, Your Honor. There was motivation because the person or persons named in the affidavit as the source of information could have been readily identified by the son. That was the hesitation. So we don't ---- So, then, you know, this is not an unknown problem. I mean, the district judge could have looked at the affidavit and taken ex parte, if really necessary, on the part of the government to make a record. I don't disagree, Your Honor. I absolutely don't disagree with Your Honor. I'm just saying that we're just jumping forward and saying, well, they own it, so they have standing. Well, that's not what the law says. They have to establish. They had an opportunity when they filed their reply brief. They had an opportunity during the proceedings where they could see, gee, this judge is not going to find us. The judge recites, recognizes that they owned and resided at the subject residence. And the whole discussion is, I think, a legal discussion as to whether there's a legitimate expectation of privacy because I don't see anything in the judge's decision that cites any contrary fact that really sets this up as being a unit that ought to be perceived as being something different. You keep talking about burden to show facts, but I don't see anything in here that's really factually driven except the judge has decided that the adult son who has a separate room at the other end of the house, that means the parents don't have a reasonable, legitimate expectation of privacy. He talks about that. He says, and only Mohammed's private bedroom and bathroom were searched. But he recognized from seeing the representations made in the pleadings, because that's all he had to go on, that Mohammed, the son, had this private, what we refer to as this private suite. Well, I've got the same facts to go on. And I'm the one that's having trouble saying that the adult son's private bedroom and bathroom means the parents who reside in the house and own it don't have full run of the house and don't have a reasonable expectation of privacy. And, Your Honor, in all due respect, as a fellow parent, I would respectfully remind you that, you know, everybody, you know, in families, everybody gets to do it their way. And this particular family had a different way to do it than Your Honor or than me. But we don't know that because there are no facts here that says it's so that different. I mean, if you prove up facts, I lived in an apartment once that was a mother-in-law apartment. Fortunately, I wasn't the mother-in-law. They were renting it to me. But it had a locked door. The apartment was distinctly separate from the rest of the house. If you would prove up that kind of fact, I might be more persuaded that, oh, yes, well, then the people living in the main part of the house don't have access. But all we have here is the fact of ownership and residence at the house. There's no physical barrier that's described. There's nothing about the habits of the family. Is that a reasonable expectation of privacy or not? Reasonable people can disagree. In this case, I'm not so persuaded the district court had it right as a matter of law. And that's the problem. I appreciate that. Again, in all due respect, I repeat, we have to go back to what the district court had and the claimants failed to present. It seems to me it's decided. It's a simple issue. Is there a separate door with a lock on or not? That's the standard in the mother-daughter. If the mother-daughter, you go downstairs and the door is unlocked, it seems to me the parents have complete access. So the door is locked, then you have an argument. And I respectfully submit that in some households a lock would be relevant, and some households, because of the dynamics, a lock may not be relevant. So there's no lock. There's no proof of a lock here, correct? I don't think that was ever brought out, no. Okay. Thank you. Your time has expired. Thank you very much for your time. I appreciate it. Thank you. And we do understand your position. Mr. McCain, you've used all of your time, but you may have half a minute for rebuttal. I'd just like to make a couple points regarding the standing issue. One is, as you will see, the search warrant was for the entire residence, not just the portion occupied by Mohammed. Secondly, the record clearly reflects the trial, and that's found at the appellee's supplemental excerpts at page 100 that the entire home was searched, not just the bedroom. The entire home was searched. It was referred to as a cursory search because they were looking primarily in the bedroom, but they searched the entire home. And thirdly, they served the search warrant after midnight on May the 25th, I believe it was, of 2005, and rousted everyone in the house, including the parents as well as another unrelated guest, and made them sit in their own living room while the search was conducted of the entire home. And there was clearly at the trial, it was conceded by the government that not only was there a separate entrance to the outside, which Mohammed could have used and which was the portal by which entry was gained into the home, but there was also a door to the home, which was just down the hallway from the rest of it, to which they had clear and unfettered access. Thank you. You've used up your time. Thank you. We appreciate the arguments of both counsel. The case just argued is submitted. And we come next to United States v. Ferguson. Thank you. The original will be returned to you, and if you're ready. That's all right. In reviewing the excerpts last night, I noted that that wasn't in it, and so I made this extra copy anticipating that this might be relevant. Excellent. All right. That's true. So do you need that returned to you, or you don't need that? Do you have the sealed affidavit, too? No. No. No. This is just the rest of it. This is the search warrant. This is just, okay. And what the portion of the affidavit, the fluff. Okay. Okay. Counsel, the question on the table is, do you need this returned to you, or do you have an extra copy? I have an extra copy. Okay. Thank you. Thank you very much. Thank you.
judges: Graber, Clifton, Trager